IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOSEPH A. FORAN,

                  Plaintiff,                              CV-07-909-ST

      v.                                  OPINION AND ORDER

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                        Defendant.
_____

STEWART, Magistrate Judge:

       Plaintiff, Joseph A. Foran, challenges the Commissioner's decision denying his application

for disability insurance benefits under Title II of the Social Security Act. The court has jurisdiction

under 42 USC § 405(g). The parties consent to the jurisdiction of the Magistrate Judge to enter a

final order and judgment in accordance with FRCP 73 and 28 USC § 636(c).

       The court reviews the Commissioner's decision to ensure that proper legal standards were

applied and the findings are supported by substantial evidence in the record. 42 USC § 405(g);

*Tommasetti v. Astrue,* 533 F3d 1035, 1039 (9th Cir 2008). The administrative law judge ("ALJ")

applied the five-step sequential disability determination process set forth in 20 CFR § 404.1520. *Bowen v. Yuckert*, 482 US 137, 140 (1987). Foran argues the ALJ improperly assessed his residual functional capacity ("RFC") and erroneously concluded he retains the ability to perform work in the national economy. For the following reasons, the Commissioner's decision is affirmed.

## DISCUSSION

### I.    RFC Assessment

The RFC assessment is the ALJ's determination of the work-related activities a claimant can still do on a sustained, regular, and continuing basis despite the functional limitations imposed by his impairments. 20 CFR § 404.1545(a); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184. The RFC assessment must be based on all the evidence in the case record, and the ALJ must consider all allegations of limitations and restrictions. SSR 96-8p, 1996 WL 374184 * 5. Foran contends that the ALJ erred by improperly rejecting his testimony, the statements of his wife, and the medical opinion of one of his treating physicians, and also by failing to comply with SSR 96-8p.

### A.    Credibility Determination

#### 1.    Foran's Testimony

Foran alleges a disability beginning September 29, 2003, due to chronic lower back pain and vision problems. Admin. R. 57, 81. He claims that he cannot sit, stand, or walk for long periods or lift and carry anything. *Id* at 81. He has problems bending and crouching. *Id* He has constant pain made worse by movement and uses narcotic pain medications which make concentration and remembering instructions difficult. *Id*.

At the hearing, Foran testified he was working as an auto parts delivery driver when he was involved in a motor vehicle accident on September 29, 2003, the day his disability allegedly began.

*Id* at 392.  He has been unable to work since that time due to pain across his lower back at the belt line, which radiates upward to his shoulder blades and downward into both legs with physical activity.  *Id* at 401.  His vision is impaired because he has a prosthetic eye after an injury from an earlier motor vehicle accident in 1985.  Despite his vision limitations, he is able to drive.  *Id* at 408.

Foran owned a restaurant until April 2006, but did not work there.  *Id* at 393.  He owns four rental properties on which he does maintenance work only about once every two years.  *Id* at 399-400.  He has 20 to 30 cars on his property for parts or restoration, but does not work on them.  *Id* at 402.  Sometimes he sells cars and parts on the Internet.  *Id* at 403-04.  He does most of the household chores, but his wife and son help.  *Id* at 408.  It takes him an hour to wash, dry and put away a sink full of dishes.  *Id*.  It takes him all day to do what used to take one hour before his disability commenced.  *Id* at 395-96.

Foran testified that his legs become numb after sitting for 10 to 15 minutes, unless he stands up.  *Id* at 408.  He can stand for less than 10 minutes and walk no more than a few blocks.  *Id* at 409.  He can lift 20 pounds, but not repetitively, and can lift a gallon of milk only three times before it becomes painful.  *Id*.  He takes MS Contin for back pain, with side effects including sleepiness, lightheadedness when standing abruptly, and dizziness.  *Id* at 406.  Foran is tired daily and takes at least one nap every day.  *Id* at 407.  He gets dizzy for a few minutes every other day or so.  *Id*.

### 2.    **ALJ's Findings**

The ALJ accepted that Foran had chronic pain from degenerative disc disease of the lumbar and thoracic spine, degenerative joint disease of the right wrist, a past cervical fusion in 1999, and bilateral carpal tunnel syndrome.  *Id* at 17.  He found that these impairments limit Foran to light exertion, with the following limitations and restrictions:  Foran retains the ability to lift, carry, push,

and pull 20 pounds occasionally and 10 pounds frequently; can sit, stand or walk up to six hours in an eight-hour workday; cannot do work requiring him to climb or engage in more than occasional stooping, crawling, kneeling, crouching, or walking up ramps or stairs; cannot reach overhead; cannot perform tasks requiring fine depth perception; and cannot be required to work around hazards because of medication side effects. *Id* at 18.

The ALJ did not accept Foran's assertions of limitations in excess of this RFC assessment. He found Foran's statements concerning the intensity, duration and limiting effects of his symptoms not entirely credible. *Id* at 19.

### 3.    Analysis

In deciding whether to accept subjective statements, an ALJ must perform two stages of analysis.  The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Smolen v. Chater*, 80 F3d 1273, 1281-82 (9th Cir 1996); *Cotton v. Bowen*, 799 F2d 1403, 1407-08 (9th Cir 1986).  There is no dispute that Foran satisfies this first stage.

At the second stage, an ALJ may discredit a claimant's testimony regarding the severity of symptoms by providing clear and convincing reasons for doing so. *Dodrill v. Shalala*, 12 F3d 915, 918 (9th Cir 1993); *Smolen*, 80 F3d at 1283.  An ALJ may consider objective medical evidence, the claimant's treatment history, daily activities, and work record, and the observations of treating sources and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F3d at 1284; SSR 96-7p, 1996 WL 374186.  The ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F3d 748, 750 (9th Cir 1995).

The ALJ considered these factors in evaluating Foran's credibility. He observed that the objective medical evidence, treatment records, and medical opinions did not support the functional limitations Foran described. Admin. R. 19. Before his accident on September 29, 2003, Foran had chronic pain in the neck and right arm from an earlier cervical fusion, a congenital right leg deformity causing a mild limp, and a prosthetic left eye with vision loss on the left. These preexisting conditions did not cause residual functional limitations, other than the vision loss, the mild limp, and intermittent tingling in two fingers of the right hand. *Id* at 242, 249. This was Foran's baseline condition throughout the time he worked as a delivery driver.

On September 30, 2003, one day after the accident, Gina Sheedy, MD, an occupational medicine specialist, released Foran to return to work with modified duties that restricted lifting, repetitive forceful gripping with the right hand, and postural activities. *Id* at 250-51, 253. Foran adamantly refused to perform the light duty office work offered by his employer. *Id* at 235-36.

Foran also declined to undergo MRI studies of the spine because of metallic implants associated with his prosthetic eye, despite assurances from the radiologist that MRI studies could be done. *Id* at 235. CT scans in October 2003 showed mild degenerative changes through the thoracic spine, without canal stenosis or foraminal stenosis. *Id* at 204. The CT study of the lumbar spine showed diffuse disc bulging, mild narrowing of the central canal, and mild forminal narrowing. *Id* at 206-07. The reporting radiologist read the CT scans as negative, opined that the degenerative changes were not significant and did not explain the back and posterior leg symptoms Foran described. *Id* at 207. Dr. Sheedy confirmed these findings with a second radiologist. *Id* at 232. X-ray images of Foran's right wrist did not show any soft tissue or bony abnormalities. *Id* at 259.

Clinically, Foran had pain and stiffness, but no neurologic symptoms. He had normal motor strength in all major muscle groups and his reflexes, sensory function, and vascular function were normal. *Id* at 240, 245-48. He ambulated freely without guarding or pain behavior. He had limited range of motion in the right wrist and lumbar tenderness without radiation. *Id* at 235-36.

In November 2003, Steven Schilperoort, MD, performed an independent medical evaluation and concluded that Foran "is capable of full regular unlimited duty work without restriction at this time." *Id* at 229. Dr. Sheedy concurred with Dr. Schilperoort. *Id* at 231.

In February 2004, Rolf Sohlberg, MD, performed an orthopedic evaluation regarding persistent pain in the right wrist. *Id* at 267-69. Dr. Sohlberg elicited pain with forced ulnar deviation, but most clinical signs were normal and x-rays were negative for significant arthritic changes. *Id* at 268. A bone scan did not rule out arthritis, inflammation, or past trauma to the wrist. *Id* at 263. In June 2004, Gary Ward, MD, conducted nerve conduction studies and concluded that Foran had median nerve compromise consistent with carpal tunnel syndrome in both wrists and with no evidence of cervical radiculopathy. *Id* at 321-22.

In August 2004, Jean Korchinski, MD, performed a consultative evaluation. *Id* at 288-91. Foran reported only intermittent right wrist pain and claimed two specialists had done EMG tests and told him he had carpal tunnel syndrome. *Id* at 289. Dr. Korchinski found Foran's condition had not changed significantly as a result of the motor vehicle accident. *Id* at 291. He had no loss of muscle strength and his sensory function was normal except for dysesthesias in two fingers of the right hand. *Id*. He was not significantly limited in the ability to use his right wrist or lumbar spine as a result of the motor vehicle accident that allegedly triggered his disability. *Id*.

Michael Mason, MD, performed CT myelogram studies of Foran's spine. The cervical studies showed mild to moderate foraminal narrowing without nerve root involvement. *Id* at 282, 284. The thoracic CT scan was within normal limits. *Id* at 280. The lumbar myelography was within normal limits and the lumbar CT scan showed mild degenerative changes but no significant central canal stenosis. *Id* at 279, 286.

In September 2004, John Kafrouni, MD, a specialist in rehabilitation medicine, read the myelogram studies as indicating Foran's lumbar and thoracic spine were absolutely normal, and his cervical spine had only mild foraminal stenosis and no central canal stenosis. *Id* at 309. He opined that Foran's back pain and related symptoms were probably due to poor posture and muscle overwork and referred Foran for physical therapy. *Id*. Foran attended five physical therapy sessions, then cancelled the remainder. *Id* at 293-305. In December 2004, Dr. Kafrouni noted that Foran had only myofascial pain without evidence of spinal stenosis, lateral stenosis, or foraminal stenosis in the lumbar spine. *Id* at 307. He was concerned that Foran was developing narcotics tolerance and engaging in erratic dosing. *Id*. He referred Foran to Brad Lorber, MD, for multidisciplinary pain management. *Id* at 308.

In January 2005, Dr. Lorber could find no pathology that would explain Foran's lower and mid back pain, either in his examination or in the records of past providers. He noted a recent EMG study had been mildly abnormal showing denervation in the S1 dermatome in the lower back without evidence of lumbar radiculopathy. *Id* at 319-20. Dr. Kafrouni questioned the presence of an S1 nerve root compromise because it was not supported by the extensive diagnostic images of the lumbar spine. *Id* at 305. Likewise, Dr. Lorber found no clinical evidence supporting lumbar radiculopathy on examination. *Id* at 335. He could not identify an etiology for Foran's thoracic pain

and he observed that the myelogram had been negative.  *Id* at 336.  Dr. Lorber found Foran was taking a subtherapeutic dose of Neurontin and relying excessively on narcotics.  *Id* at 337.  He recommended weaning narcotic pain medication and establishing a regular workout regimen.  *Id.* He opined Foran would be a candidate for his 19-day pain management program if he could get away from his self-employment duties.  *Id.*  Dr. Lorber declined to prescribe narcotics.  After two appointments with Dr. Lorber, Foran transferred care in March 2005 to Nicholas Carulli, MD.

When Foran established care with Dr. Carulli, he complained of pain in the mid and low back and numbness in the left leg.  Dr. Carulli found Foran's gait and station normal and noted he was able to exercise.  He did not mention abnormal findings in his progress notes and prescribed Amytriptyline.  *Id* at 383-85.  On March 29, 2005, Dr. Carulli noted no changes in his physical examination and obtained negative x-rays of the lumbar spine.  He opined that Foran likely had arthritic changes and deconditioning and prescribed MS Contin.  *Id* at 381-82.  Dr. Carulli saw Foran monthly without making any abnormal findings until December 20, 2005, when he first mentioned an unstable gait with a limp on the left and a positive straight leg test on the left.  *Id* at 370-71.  Notably this was the same date Dr. Carulli completed a capacities worksheet in support of Foran's disability claim at the request of Foran's attorney.  On the worksheet, Dr. Carulli indicated functional limitations so extreme as to eliminate all competitive work, as discussed more fully below.  *Id* at 348-54.

The ALJ drew an adverse inference as to Foran's credibility from the minimal objective evidence, benign clinical findings, conservative treatment prescribed by all providers, and the opinions of treating and examining sources who indicated Foran could return to work.  The ALJ discounted Dr. Carulli's opinion as discussed more fully below.

The ALJ found the treatment history showed medications have been effective in alleviating Foran's symptoms. *Id* at 19. For example, Dr. Carulli consistently noted in his treatment notes that Foran's pain had decreased in the range of 80% to 95% with medications. *Id* at 366, 367, 368, 372, 373, 375, 376, 377, 381. Dr. Lorber noted that Foran was taking a dose of prescribed medication that was insufficient to be therapeutic. *Id* at 337. Earlier, Dr. Kafrouni noted Foran exhibited erratic dosing patterns with narcotic pain medications. *Id* at 307-08. Foran had other instances of noncompliance with treatment, such as numerous cancelled appointments and noncompliance with his physical therapy exercise program. *Id* at 210. The ALJ could find Foran's pain symptoms controlled when he followed proper medication dosing and could draw an adverse inference as to the credibility of Foran's subjective symptoms from his failure to follow treatment recommendations designed to alleviate those symptoms.

The ALJ concluded that Foran reported activities which contradicted his testimony and suggested a greater functional level than Foran claimed. *Id* at 19-20. Foran completed a questionnaire indicating that he regularly performs about 75% of the housework at his home, including cooking, cleaning, vacuuming, laundry, mopping, and yard work. *Id* at 192, 194. He also reported work activities, contrary to his testimony. For example, in October 2003, Foran complained of pain when bending to work on a car. *Id* at 210. In November 2003, he reported working on old cars and working out at a health club three or more times a week. *Id* at 223. In February 2004, he injured himself while standing on a chair to work on a cabinet and told treating sources he was required to do a fair amount of driving with his job. *Id* at 260. In August 2004, Foran told Dr. Korchinski he no longer worked full time, but continued to do maintenance and marketing for his diner and rental houses. *Id* at 290. In September 2004, Foran reported his elbows

began to ache while he was operating a paint sprayer to paint a house. *Id* at 292. In October 2004, he reported working 20 to 25 hours a week as an auto tech and house remodeler. *Id* at 295. In January 2005, Foran told Dr. Lorber he was self employed with a small restaurant, rental houses, and a small wrecking yard, giving Dr. Lorber the impression he could not get away from his self employment duties to participate in a 19-day pain management program. *Id* at 334, 337. In August 2005, Foran told Dr. Carulli pain medications made him able to work better, although he could not work as much as before his accident. *Id* at 376. In October 2006, he reported an increase in back pain after "clearing ground at his business." *Id* at 365.

Foran argues these activities are not equivalent to substantial gainful activity in a competitive work setting. However, the ALJ could reasonably find these reports inconsistent with Foran's testimony that he did little or no work associated with the restaurant, rental homes, and old cars on his property. Furthermore, the reported activities are not reasonably consistent with Foran's claims that he is unable to sit more than 10 to 15 minutes, stand for 10 minutes, walk more than a few blocks, or perform any kind of work. Accordingly, the ALJ could reasonably draw an adverse inference as to Foran's credibility.

The ALJ found Foran's responses while testifying evasive and vague. *Id* at 20. A thorough review of the hearing transcript reveals no basis to disturb that conclusion.

In deciding whether to accept Foran's subjective statements, the ALJ considered appropriate factors and reached conclusions that are supported by substantial evidence in the record. The findings are sufficiently specific to permit the conclusion that he did not arbitrarily discredit Foran's testimony. *Orteza,* 50 F3d at 750. Foran's arguments require a different interpretation of the

evidence in the record. Even if the evidence supports more than one rational interpretation, the court cannot disturb the Commissioner's decision. *Tommasetti*, 533 F3d at 1038.

### B.    Evaluation of Lay Witness Statements

#### 1.    Wife's Testimony

Foran's wife Suzanne Foran provided written responses to a questionnaire dated August 15, 2005. Admin. R. 89-96. On this questionnaire she reported that Foran works around the house each day as long as he can, doing household chores such as mowing the lawn, doing laundry, and washing dishes. *Id* at 89. He works on old cars, but it takes much longer than before. *Id* at 93. He takes frequent rest breaks. *Id* at 91. Mrs. Foran indicated Foran can walk about one block before he needs to stop and rest and after two or three blocks he is done for the day usually. *Id* at 94. He has no problem following written or oral instructions, gets along with supervisors, and handles work stress without problems. *Id* at 94-95.

#### 2.    Analysis

Family members and others in a position to observe a claimant's symptoms and daily activities are competent to testify as to the claimant's condition. *Dodrill,* 12 F3d at 918. Such testimony cannot be disregarded without comment. *Nguyen v. Chater*, 100 F3d 1462, 1467 (9th Cir 1996). While the ALJ must take into account lay witness testimony about a claimant's symptoms, the ALJ may discount that testimony by providing reasons that are germane to the witness. *Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F3d 1155, 1164 (9th Cir 2008).

The ALJ considered Mrs. Foran's responses, but found them less persuasive than other evidence in the record, including the findings and opinions of medical professionals trained to evaluate impairments and their impact on functional capacity. *Id* at 20. This conclusion is

supported by the treatment history and medical findings summarized above, the opinion of Dr. Schilperoot indicating Foran was capable of regular work without restrictions, and the RFC assessment of state agency consultant Richard Alley, MD. *Id* at 229, 339-46. Inconsistency with medical evidence and other evidence in the record is a proper reason to discount lay witness statements. *See* 20 CFR 404.1529(c)(3). The ALJ's reason for doubting Mrs. Foran's statements is germane to her. Accordingly, the ALJ did not err by discounting her testimony and relying on other evidence he found more persuasive. *Greger v. Barnhart,* 464 F3d 968, 972 (9th Cir 2006).

### C.    Medical Source Statement

#### 1.    Dr. Carulli's Opinion

Foran contends the ALJ improperly rejected the opinion of Dr. Carulli. Foran established care with Dr. Carulli on March 15, 2005, complaining of back pain and numbness in the left leg. Admin. R. 383. Dr. Carulli found Foran's gait and station normal and did not indicate any abnormal clinical findings. *Id* at 383-85. Diagnostic images were not abnormal. *Id* at 381. Foran had no weakness on physical examination. By April 26, 2005, after starting a new medication regimen, Foran reported his pain had improved by 80%. *Id* In monthly office visits over the following months, Foran continued to report improvement in his pain level, and Dr. Carulli made no abnormal clinical findings. *Id* at 371-81.

On December 20, 2005, over two years after the alleged onset of disability, Dr. Carulli first found Foran had an unstable gait with a mild limp on the left. At the same time, Foran developed a positive straight leg test for radiculopathy. *Id* at 370-71. Diagnostic images showed chronic degenerative changes in the lumbar spine, but no instability. *Id* at 370. Foran continued to report

up to 95% improvement in his pain. *Id* at 366, 367, 368, 369. Dr. Carulli's clinical findings on physical examination remained essentially unchanged through the close of the record. *Id* at 355-70.

On December 20, 2005, the same day Dr. Carulli recorded his first abnormal clinical findings, he completed a residual functional capacity questionnaire prepared by Foran's attorney to support his disability claim in this case. *Id* at 348-54. Dr. Carulli indicated Foran could not walk a single city block without rest or severe pain; could sit or stand for a maximum of 15 minutes at one time and a total of less than two hours in an eight-hour workday; needed to walk every 15 minutes for four minutes; needed unscheduled breaks every 15 minutes of an eight-hour workday; could lift and carry less than 10 pounds up to 5% of an 8-hour workday; and could not lift and carry any greater amount at all. *Id* at 351-53. He also indicated a complete inability to bend, stoop, or crouch and a near inability to reach, finger, or grasp. *Id* at 353. Finally, Dr. Carulli opined that Foran had been continuously unable to work since September 2003. *Id* at 354.

### 2.    Legal Standard

Generally, a treating physician's opinion is afforded great weight in disability cases. *Ramirez v. Shalala*, 8 F3d 1449, 1453 (9th Cir 1993). However, whether a claimant is employable is not a medical opinion about specific functional limitations, but an administrative finding that the regulations reserve to the Commissioner. Opinions on issues reserved to the Commissioner cannot be given controlling weight or special significance, even when offered by a treating physician. 20 CFR § 404.1527(e); SSR 96-5p, 1996 WL 374183, *2-3. Accordingly, Dr. Carulli's opinion that Foran was continuously unable to work beginning in September 2003 is not entitled to special weight.

If a treating physician's opinion is not contradicted by another physician, then the ALJ may reject it only for clear and convincing reasons. *Thomas v. Barnhart*, 278 F3d 947, 956-57 (9th Cir 2002). Dr. Carulli's opinion is contradicted by several other physicians who opined that Foran could return to work. Under these circumstances, the ALJ could reject Dr. Carulli's opinion in favor of the conflicting opinions of other physicians only by making "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id*, quoting *Magallanes v. Bowen*, 881 F2d 747, 751 (9th Cir 1989).

### 3.    Analysis

The ALJ considered Dr. Carulli's opinion, but gave it little weight in determining his RFC assessment because it was not supported "by way of test results, objective findings or other supporting information." Admin. R. 21. As described previously, Dr. Carulli's clinical findings on physical examinations were entirely benign until December 2005, when he noted an unstable gait and positive straight leg raises. The recorded objective findings from diagnostic images were similarly unremarkable. There is no indication that Dr. Carulli obtained the medical records of Foran's previous doctors. Instead, his progress notes indicate he relied on Foran for his medical history.

An ALJ may properly reject a physician's opinion that is conclusory and unsupported by clinical findings. *Meanal v. Apfel*, 172 F3d 1111, 1117 (9th Cir 1999). Here, all clinical findings and objective diagnostic images were minimal, and Foran reported that treatment with medications significantly reduced his pain and improved his functional capacity. The ALJ's assessment of Dr. Carulli's opinion is consistent with the record as a whole.

In addition, the ALJ concluded that "much of the information Dr. Carulli used in making his assessment came from claimant's own subjective reports without any objective corroboration." Admin. R. 21.  Because there is no suggestion in the evidence of another basis for Dr. Carulli's opinion, the ALJ could reasonably infer that it was based primarily on Foran's subjective statements. An ALJ can properly reject a physician's disability opinion that is premised on the claimant's own subjective complaints which the ALJ has properly discounted. *Tonapetyan v. Halter*, 242 F3d 1144, 1149 (9th Cir 2001)*; Fair v. Bowen*, 885 F2d 597, 605 (9th Cir 1989).  The ALJ properly found Foran's subjective statements were unreliable for reasons already described.  Accordingly, the ALJ could properly discount Dr. Carulli's opinion.

The ALJ also found the extreme limitations in Dr. Carulli's questionnaire responses inconsistent with indications throughout the record that Foran engaged in activities such as household chores, working on cars, clearing ground, remodeling, maintenance and so forth as summarized previously.  Admin. R. 21.  A person with the limitations described in Dr. Carulli's questionnaire responses would be incapable of even brief periods of light exertion.  The ALJ could reasonably conclude that such a person would not be able to undertake the activities in which Foran reportedly engaged.

It is the ALJ's responsibility to resolve conflicts in the medical evidence.  *Carmickle*, 533 F3d at 1164.  Here the ALJ provided specific, legitimate reasons to discount Dr. Carulli's opinion in favor of other physicians who believed Foran's limitations did not preclude work.  Drs. Sheedy and Schilperoort opined that Foran could return to work with appropriate restrictions.  Admin. R. 229, 231, 246.  The state agency reviewing physicians had a comprehensive, longitudinal record of Foran's medical condition and treatment from the onset of disability.  The ALJ gave great weight

to their RFC determination. *Id* at 20, 339-46, 347. The ALJ did not ignore Dr. Carulli's statement, but gave due consideration to appropriate factors and found his statement unsupported and inconsistent with the record as a whole. He gave greater weight to the findings and opinions of other sources who had greater information and whose opinions were consistent with the record.

The court must uphold the ALJ's factual findings if they are supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, the court must defer to the Commissioner's decision. *Tommasetti,* 533 F3d at 1038. The ALJ rationally resolved the conflicting medical evidence by discounting Dr. Carulli's opinion.

### D.    Requirements of SSR 96-8p

SSR 96-8p requires an ALJ to consider all the relevant evidence in the case record, all the allegations of physical and mental limitations, and any available information about symptoms. Foran contends the ALJ failed to satisfy SSR 96-8p because he did not discuss whether Foran can work on a regular and continuing basis, consider all of his impairments and medication side effects, and develop the record regarding his depression.

In support of his argument that the ALJ failed to consider his ability to work on a regular and continuing basis, Foran cites only his subjective testimony and the opinion of Dr. Carulli. Foran testified that he frequently naps due to fatigue and suffers a few minutes of dizziness every other day or so. Admin. R. 407. The ALJ considered Foran's subjective testimony and found it was not credible. *Id* at 19. Dr. Carulli opined that Foran would be absent from work at least four days a month and his symptoms would interfere with attention and concentration. *Id* at 350, 354. The ALJ considered Dr. Carulli's opinion and gave it little weight, in favor of other evidence. *Id* at 21. Foran

has not identified credible evidence suggesting he cannot work on a regular and continuing basis which the ALJ failed to consider.

Foran argues the ALJ's RFC assessment failed to incorporate limitations caused by carpal tunnel syndrome, wrist arthritis, and depression.  However, Foran did not allege functional limitations associated with these diagnoses in his application for disability benefits or in his testimony.  *Id* at 81, 401, 407-09.  Furthermore, Foran has not identified credible evidence of functional limitations from these diagnoses which the ALJ failed to consider.

Regarding carpal tunnel syndrome, Foran reported intermittent tingling and/or numbness in two fingers of the right hand in June 2004.  EMG studies showed this was due to carpal tunnel syndrome and not cervical nerve root compromise.  *Id* at 312, 321-22.  Dr. Kafrouni referred Foran to see Jerry Nye, MD, for a evaluation and treatment of carpal tunnel syndrome.  *Id* at 312.  Foran failed to attend scheduled appointments until September 2004 when he reported intermittent tingling in the right hand and a recent onset of elbow pain associated with painting a house.  *Id* at 292.  Dr. Nye planned treatment, but there is no indication Foran ever followed up.  The ALJ could reasonably infer from Foran's failure to return for treatment from Dr. Nye that his carpal tunnel syndrome did not impose functional limitations Foran found troublesome.  *See Tommasetti*, 533 F3d at 1039.

Regarding wrist arthritis, diagnostic images following Foran's motor vehicle accident in September 2003 disclosed degenerative joint disease in the right wrist.  Admin. R. 208. Dr. Schilperoort also found Foran had preexisting degenerative arthritis in the right wrist.  *Id* at 228. There is no claim or evidence that this condition caused functional limitations affecting Foran's work prior to the accident in September 2003.  The evidence of functional limitation following the

accident is also unpersuasive.  One week after the accident Dr. Sheedy released Foran to return to work with instructions to avoid forceful or repetitive gripping and use of the right hand and wrist. *Id* at 251.  Foran then reported good improvement in the wrist after two sessions of physical therapy. *Id* at 245.  Dr. Schilperoort noted indications of invalid effort in his capacities evaluation , including patently invalid effort in alternating grip strength test.  *Id* at 227-28.  He opined Foran was not significantly limited in the ability to repetitively use the right wrist as a result of the accident.  *Id* at 291.  In Dr. Sohlberg's evaluation of Foran's right wrist, most clinical findings were normal and x-rays showed no significant arthritic changes.  *Id* at 267-69.  Foran did not seek treatment or report further problems with arthritis in the wrist, other than the carpal tunnel syndrom evaluation by Dr. Nye.  The ALJ could reasonably conclude from this evidence that Foran failed to establish any ongoing functional limitation flowing from arthritis in the right wrist.

Regarding depression, Foran reported a history of depression treated with Effexor when he saw Dr. Sheedy after the September 2003 accident.  *Id* at 249.  He did not report current symptoms of depression until July 2007, when he said he had recently experienced more trouble with depression.  *Id* at 378.  He did not specify symptoms or identify resulting functional limitations, if any.  His depression was much improved with an increase in his dosage of Effexor.  *Id* at 377.  The ALJ could reasonably conclude from the evidence that medications effectively controlled Foran's depression.

Foran argues the ALJ should have ordered a consultative evaluation to determine the functional impact of his depression.  The ALJ's duty to conduct an appropriate inquiry is triggered only when the evidence is ambiguous or when the record is inadequate to allow for proper evaluation of the evidence and determination of the issue of disability.  *Mayes v. Massanari,* 276

F3d 453, 459-60 (9th Cir 2001); *Tonapetyan,* 242 F3d at 1150; *Smolen,* 80 F3d at 1288.  Here it was unnecessary for the ALJ to develop the record regarding the functional impact of Foran's depression because the evidence showed his depression was controlled with medications.  Foran did not identify any evidence of functional limitations attributable to depression.  Accordingly, there was no ambiguity to resolve or inadequacy to correct.

Regarding medication side effects, the ALJ acknowledged Foran's subjective assertions of drowsiness, fatigue, and dizziness resulting from narcotic pain medications by reducing his RFC assessment to preclude work around hazards.  *Id* at 18, 20.  Foran did not identify any credible evidence of additional functional limitations from medication side effects which the ALJ failed to consider.

The Social Security Act places the initial burden of producing evidence and proving the functional limitations that make up the claimant's RFC on the claimant.  42 USC § 405(g); *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995).  The ALJ's written decision demonstrates that he considered all the evidence in the case record and all the allegations of limitations and restrictions.  He did not find support in the record for the additional limitations Foran now claims.  Accordingly, Foran has failed to satisfy his burden of proving those limitations and the ALJ's RFC assessment complied with the requirements of SSR 96-8p.

## II.    **Vocational Evidence**

Foran challenges the vocational evidence on two grounds.  First, he contends the ALJ elicited vocational testimony from the VE with a hypothetical question that did not contain all of his limitations and restrictions.  He contends the ALJ should have included additional limitations based on alleged errors in the ALJ's RFC assessment.  His arguments in support of those errors cannot be

sustained for reasons discussed previously in this opinion.  The ALJ considered all the evidence and framed his vocational hypothetical question based on the limitations supported by the record as a whole.  The hypothetical limitations reflected reasonable conclusions that could be drawn from the record.  An ALJ is not required to incorporate limitations based on evidence that he properly discounted.  *Osenbrock v. Apfel,* 240 F3d 1157, 1164-65 (9th Cir 2001).

Second, Foran contends the ALJ improperly found him capable of performing semiskilled and skilled work without identifying transferable skills which would enable him to do so.  When the issue of skills and their transferability must be decided, the ALJ is required to make findings of fact identifying the acquired work skills, the occupations to which the acquired work skills are transferable, indicating that such occupations exist in significant numbers in the national economy. SSR 82-41, 1982 WL 31389 * 7.  These findings may be based on the  expert knowledge of a VE. *Id*  In finding that Foran had skills transferable to other work, the ALJ identified the specific occupation he could perform and its numbers in the national economy, but did not identify the specific skills Foran had acquired.  Admin. R. 22.

Foran reported a work history that included five years as an auto parts delivery driver for a car dealership and seven years as an auto mechanic for a car dealership.  *Id* at 97-99.  The VE testified that the parts delivery work was semiskilled and the work as a mechanic was skilled.  *Id* at 412.  The VE testified, and the ALJ found, that the limitations in Foran's RFC would preclude him from returning to his past work. *Id* at 21, 413.  The VE testified that Foran's past skilled work as an auto mechanic qualified him to work in the similar skilled occupation of service writer.  *Id* at 413.    Transferability of skills between occupations is meaningful and probable where the same or similar tools, machines, processes or services are involved.  A complete similarity of all factors is

not necessary.  SSR 82-41, 1982 WL 31389 * 5.  In his work as an auto mechanic, Foran utilized technical knowledge and skills to operate machines, tools and equipment and complete written reports regarding these activities.  Admin. R. 99.  A service writer also works in a car dealership or service and repair facility, preparing work orders indicating what service or repair is required and scheduling the work with an auto mechanic.  *Id* at 415.  It is logical that the technical knowledge and skills Foran acquired in his past work as an auto mechanic would transfer to similar work in a similar setting involving the same activities.  Further, the Commissioner may carry his burden of showing that jobs exist which Foran can do by relying on the testimony of a VE.  *Osenbrock,* 240 F3d at 1163.  Accordingly, the ALJ was justified in relying on the VE's testimony that Foran had transferable skills.  The ALJ's determination that Foran's prior work experience qualified him to work as a service writer is supported by substantial evidence.

The court must uphold the Commissioner's decision if it supported by substantial evidence, even if the evidence is susceptible to more than one rational interpretation.  *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F3d 595, 599 (9th Cir 1999); *Andrews v. Shalala,* 53 F3d 1035, 1039-40 (9th Cir 1995).  Foran's contention that the Commissioner's determination was based on improper vocational testimony cannot be sustained.

## **ORDER**

The ALJ applied proper legal standards and his findings are supported by substantial evidence.  As a result, the Commissioner's final decision is AFFIRMED and this case is DISMISSED.

DATED this 4th day of December, 2008.

/s/  Janice M. Stewart_____
Janice M. Stewart

United States Magistrate Judge